**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ELIZABETH REED, Individually and as** | § | |
| **Representative of the Estate of J. R.,** | § | |
| **Deceased,** | § | |
|       **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:16-CV-1228-BH** |
| | § | |
| **KERENS INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
|       **Defendant.** | § | **Consent Case** |

## MEMORANDUM OPINION AND ORDER

By order filed September 29, 2016, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. (doc. 23.) Before the Court for determination is *Defendant's Motion to Dismiss Plaintiff's First Amended Complaint*, filed October 31, 2016 (doc. 29). Based on the relevant filings and applicable law, the defendant's Rule 12(b)(1) motion to dismiss is **DENIED**, and its Rule 12(b)(6) motion to dismiss is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

On May 5, 2016, Elizabeth Reed (Plaintiff), individually and on behalf of the estate of her minor son (J.R.), filed suit against the Kerens Independent School District (Defendant) after J.R. took his own life. (doc. 1.)[1] Her amended complaint alleges claims under Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments Act of 1972, the Rehabilitation Act of 1973, the Americans with Disabilities Act (ADA), and 42 U.S.C. § 1983 as a result of its alleged

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

failure to take action to prevent other students from bullying J.R.[2]  (doc. 26 at 22-25.)  She seeks damages, attorneys' fees, and equitable relief.  (*Id.* at 26-28.)

J.R. was a middle school "student of Hispanic and Anglo descent," who was 5' 4" tall and weighed 260 pounds.[3]  (*Id.* at 14.)  Plaintiff alleges that because of his weight, he had "very obvious and large female like breasts."  (*Id.*)  He suffered from depression and received psychoactive medication and counseling.  (*Id.* at 14, 17.)  His school was aware of his depression and that he took medication for it.[4]  (*Id.* at 14.)

Beginning in the 2009-2010 school year, other students began to bully and harass J.R. on an almost daily basis, calling him derogatory names that made fun of his weight, his physical attributes, and race.  (*Id.*)  He repeatedly reported to Plaintiff that he was bullied at school by other students, who called him names, teased him, and pushed him to the floor.[5]  (*Id.*)  J.R.'s parents informed the school about the bullying and were assured that it would be resolved.  (*Id.* at 14-15.)  J.R. also went to his school's principal "more than once" to complain of bullying and harassment.  (*Id.* at 15.)  The school board was informed by other parents about bullying within the district.  (*Id.* at 15-16.)  As a result of the continued bullying, J.R.'s grades suffered, he required special tutoring for the STAR test, and he continued to binge eat, which caused him to become more depressed.  (*Id.* at 17.)

---

[2] Although Plaintiff's complaint mentions the Individuals With Disabilities Education Act several times in relation to the exhaustion of administrative remedies, she does not actually assert a claim under the act.  (*See* doc. 26.)

[3] Plaintiff  appears to allege that J.R. was male, (*see, e.g.,* doc. 26 at 1-2), but in several places within the amended complaint, the child is identified as "she" and "her," and identified by different initials.  (*See., e.g., id.* at 16.)  There are also several comments about a sexual assault.  (*See id.* at 16-17.)

[4] Plaintiff does not allege when Defendant became aware of this, but she does allege that J.R. informed the band director that he was taking medication for depression on the day of his suicide.  (*See* doc. 26 at 18.)

[5] Plaintiff alleges that because of his weight, J.R. had difficulty getting up from the ground.  (*See* doc. 26 at 15, 21.)

J.R. had repeated disciplinary issues at school in 2012 and 2013. (*Id.* at 17.) He was disciplined for not letting go of a student's backpack, fighting, setting a trash can on fire, and rubbing another student's crotch. (*Id.*) J.R. also sniffed glue at school, and empty bottles of glue were found in his locker. (*Id.*) As a result, he received punishment ranging from detention to in-school and out-of-school suspensions. (*Id.*) The school did not investigate the cause of the altercations involving J.R. or the reason for his actions, and it did not inform his parents about the glue. (*Id.*)

Plaintiff alleges that some of her son's disciplinary problems were the result of Defendant not "inquiring as to why [he] was involved in the first instance." (*Id.* at 15.) For example, on April 25, 2013, J.R. was hit with a hockey stick by another student in P.E. class. (*Id.*) He told the other boy to stop or that he would report him. (*Id.*) The other student responded, "I don't give a damn, I'll just kick your ass." (*Id.*) An alteration ensued, but only J.R. was written up. (*Id.*) The school did not inquire as to why J.R. was involved. (*Id.*)

On May 5, 2014, as J.R. was leaving school, he was surrounded by a small group of male students. (*Id.* at 17-18.) The students "began to bully and harass him based upon his obesity." (*Id.* at 18.) He was knocked to the ground and was unable to get up. (*Id.*) While on the ground, J.R. asked the group, "What are you going to do if I kill myself?" (*Id.*) A female student who heard the statement left to inform the principal about what he said.[6] (*Id.*)

The following day, May 6, 2014, J.R. wrote in the boys' restroom at school: "In 3 days there will be a shooting - you have been warned." (*Id.*) The school investigated and determined that he wrote the statement. (*Id.* at 2.) J.R. informed the administrators that he was hearing voices that kept

---

[6] The complaint does not allege that the student actually informed the principal, another administrator, or teacher of J.R.'s statement. (*See* doc. 26 at 18.)

saying, "You're going die, you're going to die," and that he had re-occurring dreams in which a friend was shot and killed. (*Id.* at 18.) He also informed the administrators that he was taking medication for depression. (*Id.*) Plaintiff was called to the school. (*Id.*) When she arrived, Plaintiff and J.R. were informed by a school administrator that there would be a hearing, but that it was likely that J.R. would be sent to the disciplinary alternative education program for a month. (*Id*. at 19.) The chief of police told them that there would be criminal proceedings. (*Id.*) Plaintiff took J.R. home, and later that day, he committed suicide. (*Id.* at 2, 19.)

On August 23, 2014, Plaintiff filed a complaint with the U.S. Department of Education, Office for Civil Rights (OCR). (*Id.* at 20.) She alleged that Defendant discriminated against J.R. because of his disability and race. (*Id.*) On September 25, 2015, Defendant voluntarily entered into a resolution agreement. (*Id.* at 21.) On May 5, 2016, Plaintiff filed this action. (doc. 1.)

On October 31, 2016, Defendant moved to dismiss Plaintiff's claims. (doc. 29.) She responded on December 7, 2016,[7] and Defendant replied on January 6, 2017. (docs. 38, 43.)

## II. RULE 12(b)(1)

Defendant moves to dismiss Plaintiff's ADA and § 504 claims under the under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (doc. 29 at 10.)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the

---

[7] In her response, Plaintiff accuses Defendant of destroying or withholding documents during OCR's investigation and states her belief that "this is reason enough to deny Defendant's *Motion [to Dismiss]*." (doc. 38 at 10.) She provides no legal basis for this argument. (*See id.*)

party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

A district court may dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction. *Id.* Facial attacks are usually made early in the proceedings. *Id.* "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed

to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161. Here, Defendant's motion presents a facial attack that does not require the resolution of factual matters outside the pleadings.[8] *See Williamson*, 645 F.2d at 412-13.

A.    **Exhaustion of Administrative Remedies**

Defendant argues that Plaintiff's ADA and § 504 claims should be dismissed for lack of jurisdiction because she failed to exhaust her administrative remedies prior to filing suit. (doc. 29 at 10.) It contends that Plaintiff's claims relating to J.R.'s identification as a student with a disability, educational placement, accommodation, and plan are subject to the exhaustion requirements of the Individuals with Disabilities Education Act (IDEA), but that Plaintiff has not pleaded that she exhausted her administrative remedies prior to filing suit. (*Id.* at 13.)

A purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education [(FAPE)] that emphasizes special education and related services

---

[8] Although Defendant makes a facial attack, Plaintiff submitted a 377-page appendix with her response. (*See* doc. 38-1 at 1-377.) Because Defendant made a facial attack, the allegations in Plaintiff's complaint are presumed to be true and it is unnecessary to resolve any factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13. Accordingly, it is unnecessary to consider the documents in Plaintiff's appendix in resolving Defendant's 12(b)(1) motion.

designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The IDEA requires the education of children with disabilities to be tailored through an individualized education plan (IEP).[9] 20 U.S.C. § 1401(a)(20); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 247-48 (5th Cir. 1997). "Only certain students with disabilities, however, are eligible for IDEA's benefits. Specifically, to qualify for special education services a student must both: (1) have a qualifying disability and (2) 'by reason thereof, need [ ] special education and related services.'" *Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d 378, 382 (5th Cir. 2007) (quoting 20 U.S.C. § 1401(3)(A)) (alteration in original).

A plaintiff must first exhaust the state administrative proceedings set forth in the statute before bringing suit based on the IDEA. 20 U.S.C. § 1415(l); *Gardner v. Sch. Bd. of Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992). When, as in this case, a plaintiff does not actually bring a claim based on the IDEA, the act's exhaustion requirement also applies to claims under the Constitution, ADA, Rehabilitation Act, and other federal laws protecting children with disabilities to the extent those claims seek relief "that is also available under [the IDEA]." 20 U.S.C. § 1415(l); *see, e.g., Doe v. Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 559 (N.D. Tex. 2016) (noting "[t]he fact that [the plaintiff] has not explicitly alleged a claim under that statute is not conclusive because its exhaustion requirement extends to all claims seeking relief that is also available under the IDEA. Thus, a plaintiff cannot avoid the exhaustion requirements of the IDEA by repackaging the claims under some other statute.") (internal citation and quotation marks omitted).

---

[9] "The IDEA does not entitle a disabled child to an IEP that maximizes his [or her] potential, but instead only guarantees a 'basic floor' of opportunity 'specifically designed to meet the child's unique needs, supported by services that will permit him [or her] to benefit from the instruction.'" *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1008 (5th Cir. 2010) (quoting *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 (5th Cir. 2009)). The educational benefit, however, "cannot be a mere modicum or *de minimis*; rather, an IEP must be likely to produce progress, not regression or trivial educational advancement." *Richardson Indep. Sch. Dist.*, 580 F.3d at 292 (citation omitted).

As recently explained by the Supreme Court:

> Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA. We first hold that to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only "relief" the IDEA makes "available." We next conclude that in determining whether a suit indeed "seeks" relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint.

*Fry v. Napoleon Cmty. Schs.*, 137 S.Ct. 743, 746 (2017).

In a decision that has since been vacated, the Fifth Circuit noted an apparent split of authority regarding the nature of exhaustion, but has declined to decide whether the IDEA's exhaustion requirement is jurisdictional. *See Stewart v. Waco Indep. Sch. Dist.*, 711 F.3d 513, 527-530 & n.22 (5th Cir. 2013) (citing *M.L. v. Frisco Indep. Sch. Dist.*, 451 F. App'x 424, 427 (5th Cir. 2011) & *Gardner*, 958 F.2d at 112), *vacated & withdrawn on reh'g*, 599 F. App'x 534 (5th Cir. 2013) (per curiam).[10] Within this district, the IDEA's exhaustion requirement has been interpreted as jurisdictional. *See Dabney v. Highland Park Indep. Sch. Dist.*, No. 3:15-CV-2122-L, 2016 WL 1273467, at *6 n.2 (N.D. Tex. Mar. 31, 2016) (noting "[t]he IDEA's exhaustion requirement has been interpreted as jurisdictional") (citing *Gardner*, 958 F.2d at 112 & *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002)); *Hooker v. Dallas Indep. Sch. Dist*, No. 3:09-CV-1289-D, 2010 WL 4025877, at *6 (N.D. Tex. Oct. 13, 2010) (noting "the court holds that the exhaustion requirement of the IDEA is jurisdictional").

"The IDEA's exhaustion requirement serves a number of policy objectives: it allows

---

[10] Federal courts have previously recognized that "[a] vacated decision is deprived of its precedential effect." *Salitros v. Chrysler Corp.*, 306 F.3d 562, 575 n.2 (8th Cir. 2002); *see also Okpalobi v. Causeway Med. Suite*, 244 F.3d 405, 432 (5th Cir. 2001) (Higginbotham, J., concurring) ("The panel opinion no longer exists. It was vacated by the order granting en banc review."); *United States v. Cisneros*, 456 F. Supp. 2d 826, 839 (S.D. Tex. 2006) ("A vacated decision, while persuasive, is no longer binding precedent.").

deference to agency expertise in resolving educational matters; it gives the agency a first opportunity to correct errors; it presents courts with a more fully developed record; and it prevents parties from deliberately disregarding the statute's comprehensive procedures and remedies." *Marc V. v. N.E. Indep. Sch. Dist.*, 455 F. Supp. 2d 577, 592 (W.D. Tex. 2006); *accord Papania-Jones v. Dupree*, 275 F. App'x 301, 303-04 (5th Cir. 2008) (per curiam) ("By failing to exhaust the IDEA's administrative remedies, the Jones family did not give the State an appropriate opportunity to resolve their complaints prior to filing suit against the State."). The IDEA prevents plaintiffs from circumventing the administrative exhaustion requirement by taking claims that could have been brought pursuant to the IDEA and repackaging them as claims under other statutes. *Marc V.*, 455 F. Supp. 2d at 592. The plaintiff has the burden of proof to show that exhaustion would be futile or inadequate. *Papania-Jones*, 275 F. App'x at 303.

Here, both parties appear to agree that Plaintiff seeks relief that could have been brought under the IDEA. (*See* docs. 29 at 12; 38 at 24.) Her amended complaint does not allege that she has exhausted her administrative remedies, so her ADA and § 504 claims would ordinarily be subject to dismissal on this basis. *See, e.g., Doe*, 194 F. Supp. 3d at 559 (dismissing the plaintiff's Title IX claim because it was subject to the IDEA's exhaustion requirement and she had not alleged in her complaint that she had complied with it). Plaintiff alleges, however, that exhaustion would have been futile. (doc. 38 at 24.)

## B.     Futility Exception

"The Supreme Court has held that futility in pursuing administrative relief is an *exception* to exhaustion under IDEA." *M.L.*, 451 F. App'x at 427 (emphasis added) (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)). "To show futility, a plaintiff must demonstrate that adequate remedies are

not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Id.* at 428 (quoting *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) (quotation marks and citation omitted)).

### 1.    *Systematic violations*

Plaintiff first argues that exhaustion was not required because she is alleging a systemic problem.[11]  (doc. 38 at 24.)

District courts within the Fifth Circuit have recognized "[t]he futility exception applies when there are systematic violations (such as a total failure to prepare and implement individualized education programs), when the hearing officer would be powerless to correct alleged violations, or when there is a settled law policy that cannot be addressed through administrative procedures." *Hooker v. Dallas Indep. Sch. Dist.*, No. 3:09-CV-0676-G-BH, 2010 WL 4025776, at *9 (N.D. Tex. Sept. 13, 2010), *adopted by* 2010 WL 4024896 (N.D. Tex. Oct. 13, 2010) (citing *Papania-Jones*, 275 F. App'x at 304); *accord Comb v. Benji's Special Educ. Acad.*, No. H-10-3498, 2012 WL 1067395, at *8 (S.D. Tex. Mar. 28, 2012) (same).

Although Plaintiff argues that there was a systemic problem, her complaint does not explain how her case could not be remedied by local or administrative agencies, or how this case is similar to the systemic issues confronted in the case upon which she relies, *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444 (2d Cir. 1987).  (*See* doc. 38 at 24.)  Plaintiff has not met her burden

---

[11] Plaintiff refers to a "systemic" problem as an exception to futility in her response (doc. 38 at 24), which is consistent with the language used by the Second Circuit.  *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 113 (2d Cir. 2004) ("The district court correctly observed that this Court has previously excused exhaustion of administrative remedies in cases that included allegations of *systemic* violations.") (emphasis added).  Similar cases within the Fifth Circuit, including one circuit opinion explicitly relying on authority from the Second Circuit, have used the phrase "systematic" violations when considering the same exception.  *See, e.g., Papania-Jones*, 275 F. App'x at 304 ("The Second Circuit considered this same futility issue and found that exhaustion may be bypassed in situations with *systematic* violations that a hearing officer would have no power to correct.") (emphasis in original) (citing *J.S.*, 386 F.3d at 113); *Hooker*, 2010 WL 4025776, at *9 (citing *Papania-Jones*, 275 F. App'x at 304).

to show that administrative exhaustion would be futile because of a systematic problem. *See Papania-Jones*, 275 F. App'x at 303 (noting the plaintiff has the burden to show that exhaustion would be futile or inadequate).

### 2. Death

Plaintiff's amended complaint focuses on J.R.'s death as the cause of the futility.[12] (*See* doc. 26 at 4.) She notes that there is no binding Fifth Circuit precedent on this issue. (*Id.* at 24-25.)

In *Morton v. Bossier Parish Sch. Bd.*, No. 12-1218, 2013 WL 696725 (W.D. La. Feb. 26, 2013), the mother of a child who had taken her own life sued the school board. *Id.* She accused it of failing to take action to prevent the harassment of her daughter and accommodate her disabilities, and she sought damages under the Louisiana Civil Code, 42 U.S.C. § 1983, § 504 of the Rehabilitation Act of 1973, and the ADA as amended or modified by the IDEA. *Id.* at *1. The school board moved to dismiss the IDEA claims under Rule 12(b)(1) for failure to exhaust administrative remedies. *Id.* at *3. The district court found the exhaustion requirement inapplicable under the circumstances:

---

[12] Plaintiff's administrative exhaustion section states in its entirety:

11. J.R. has alleged, among other things, that he was a student with a disability, whether it be pursuant to Section 504 of the Rehabilitation Act of 1973, the Americans With Disabilities Act or the Individuals With Disabilities Education Act, 20 U.S.C. §1401 et seq. ("IDEA"). As such, save for the fact he is deceased he would otherwise be required to satisfy the Administrative Exhaustion requirements of IDEA; see 20 U.S.C. §1415(1) and 19 T.A.C. §89.1185(p).

12. The Courts have recognized an exception to the is exhaustion requirement, it is when there is relief that could be obtained through this administrative process. It is known as the futility exception. It is now well-settled that a student who is deceased cannot receive any remedy that a Hearing Officer could provide and as such satisfies this futility exception.

13. As such, J.R. is not required to go through Administrative Exhaustion in this case.

(doc. 26 at 4; *see also* doc. 38 at 24 (noting "if J.R. was alive [Defendant] would be correct regarding exhaustion," but that "because he is deceased the Courts who have reviewed this issue have all held that it is futile in such circumstances").)

It should be noted that neither party has cited any controlling Fifth Circuit case expounding upon the IDEA's administrative exhaustion requirement as it pertains to a deceased child. The precise issue is *res nova*. While this issue appears to be a matter of first impression in this Circuit, the Court's holding today is supported by a common-sense analysis of the meaning of "futile" or "inadequate" in addition to a consideration of the inherent limitations of administrative remedies. Allowing the Plaintiff to by-pass the exhaustion requirement in this case is also supported by holdings in other circuits dealing with cases in which either the child is deceased or the plaintiff sought purely retrospective monetary damages that were unavailable through the administrative process. *See Taylor v. Altoona Area Sch. Dist.*[ ], 737 F.Supp.2d 474, 482 (W.D.Pa.2010)(permitting the exhaustion requirement to be waived ... such as where the parents of a deceased child seek damages for a school board's failure to provide IDEA services while the child was still alive in accordance with the narrow exception found in *W.B. v. Matula*, 67 F.3d 484, 489 (3d Cir.1995) *abrogated in part on other grounds by A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir.2007).

*Id.* (internal footnotes omitted). In absence of specific authority from the Fifth Circuit, the reasoning in *Morton* appears consistent with the authority regarding the futility exception generally. *See M.L.*, 451 F. App'x at 428 (noting "[t]o show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process"). It is also consistent with the holdings in similar cases from other circuits.[13]

Citing *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 63 (1st Cir. 2002), Defendant argues that Plaintiff "could have requested a due process hearing for the IDEA and Section 504 claims at any point during J.R.'s time at Kerens ISD, but she failed to do so. She should not be permitted now to side-step the exhaustion requirement by having waited so long to bring these claims." (doc. 29

---

[13] *See, e.g., Estate of D.B. by Briggs v. Thousand Islands Cent. Sch. Dist.*, 169 F. Supp. 3d 320, 329-30 (N.D.N.Y. 2016) (finding that exhaustion of administrative remedies for a student who had committed suicide would have been futile and that the student's estate was not required to exhaust administrative remedies prior to bringing suit), *abrogated in part on other grounds by Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 200 (2d Cir. 2017); *Moore v. Hamilton Se. Sch. Dist.*, No. 1:11-CV-01548-SEB-DML, 2013 WL 4607228, at *11 (S.D. Ind. Aug. 29, 2013) (same); *Moore v. Chilton Cty. Bd.,* 936 F. Supp. 2d 1300, 1307-08 (M.D. Ala. 2013) (same); *Taylor v. Altoona Area Sch. Dist.*, 737 F. Supp. 2d 474, 482-83 (W.D. Pa. 2010) (same); *Scruggs v. Meriden Bd. of Ed.*, No. 3:03-CV-2224-(PCD), 2007 WL 2318851, at *7 (D. Conn. Aug. 10, 2007) (same).

at 11-12.)  In *Frazier,* the First Circuit noted that a finding that graduation rendered exhaustion under the IDEA futile "might simply encourage plaintiffs to wait to dispute the adequacy of their educational programs until after graduation precisely in the hope of recovering money damages." *Frazier,* 276 F.3d at 63 (citation omitted).  This analogy was specifically rejected in the context of a student's death in *Estate of D.B. by Briggs v. Thousand Islands Cent. Sch. Dist*., 169 F. Supp. 3d 320 (N.D.N.Y. 2016), *abrogated in part on other grounds by Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 200 (2d Cir. 2017):

> A court finding that suicide renders exhaustion futile cannot fairly be said to encourage parents of bullied children to "sit on" a live claim, wait for their children to commit suicide, and then sue for damages. Simply stated, suicide is not the same as graduation.

*Id.* at 330.

In conclusion, requiring the Plaintiff to pursue administrative remedies through the school district after J.R.'s death would be futile, so she has established an exception to the exhaustion requirement.  Defendant's motion to dismiss under Rule 12(b)(1) is denied.

### III. RULE 12(b)(6)

Defendant also moves to dismiss Plaintiff's Title VI, Title IX, § 504, and § 1983 claims under Rule 12(b)(6).  (doc. 28 at 14-27.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.  *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th

Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (citation omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Here, Defendant has not submitted any documents outside the pleading with their motion to dismiss. (doc. 29.) Conversion of the defendant's motion to dismiss into a motion for summary judgment is therefore unnecessary. *See Collins*, 224 F.3d at 499; *Katrina Canal Breaches Litig.*, 495 F.3d at 205.[14]

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon

---

[14] As noted, Plaintiff submitted a 377-page appendix of documents that were not attached to her amended complaint. (*See* docs. 38 at 3l; 38-1 at 1-377.) The majority of these documents appear to have been explicitly referenced in her amended complaint and will be considered only to the extent that they meet the definition of pleadings. *See Spivey*, 197 F.3d at 774.

which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

A.    **Title IX**[15]

Defendant moves to dismiss Plaintiff's Title IX claim because she fails to allege that the actions of J.R.'s peers were based on sex, sufficiently pervasive to exclude him from access to an education program, or that it acted with deliberate indifference. (doc. 29 at 16-17.)

Title IX of the Education Amendments of 1972 states that "[n]o person in the United States shall, on the *basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). Under Title IX, a recipient of federal funds may be held liable "only for its own misconduct" and not the misconduct of third parties. *Davis v. Monroe Cty.*

---

[15] Although Defendant addresses Plaintiff's Title VI claim first in its motion to dismiss, the Title IX claim is considered first here because its analysis impacts the Title VI claim.

*Bd. of Ed.*, 526 U.S. 629, 640-41 (1999) (noting "[t]he recipient itself must 'exclud[e] [persons] from participation in, ... den[y] [persons] the benefits of, or ... subjec[t] [persons] to discrimination under' its 'program[s] or activit[ies]' in order to be liable under Title IX").

To assert a cause of action under Title IX for student-on-student harassment, a plaintiff must allege facts showing that: (1) the school had actual knowledge of the harassment, (2) the harasser was under the school's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the school was deliberately indifferent to the harassment. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).

### 1.    *Based on Sex*

The third element requires that the offensive behavior be *based on sex*, per the words of Title IX, and "not merely tinged with offensive sexual connotations." *Id.* (quoting *Frazier*, 276 F.3d at 66). Nor may it be based on personal animus or other reasons. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 3:08-CV-1559-BF, 2010 WL 445939, at *2 (N.D. Tex. Feb. 8, 2010) (quoting *Davis*, 526 U.S. at 652), *aff'd*, 647 F.3d 156 (5th Cir. 2011). "Whether gender-oriented conduct rises to the level of actionable harassment thus depends on a constellation of surrounding circumstances, expectations, and relationships." *Davis*, 526 U.S. at 651 (internal quotation marks and citation omitted). These circumstances include the ages of the parties involved. *Id.* "[I]n the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it." *Id.* "Damages are not available for simple acts of teasing and name-calling among school children, however, even where

these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Id.*

Here, Plaintiff alleges that J.R. was bullied, harassed, and teased on an almost daily basis in part because of his female-like appearance. (doc. 26 at 14, 23.) She claims that J.R.'s classmates' actions and name-calling questioned his sexuality and manhood. (*Id.*) It is well-settled that offensive behavior in a Title IX must be based on sex and not "tinged with offensive sexual connotations." *Sanches*, 647 F.3d at 165. Some federal courts, however, have found that verbal statements, even by middle and high school students, may constitute sexual harassment.[16] Accepting her well-pleaded facts as true and viewing them in the light most favorable to her, as the Court must, Plaintiff has sufficiently alleged a consistent pattern of bullying, harassment, and teasing against J.R. by his classmates because of his failure to adhere to traditional gender stereotypes and his female-like appearance for purposes of Rule 12(b)(6).

### 2. *Barred Access to Education Opportunity or Benefit*

Student-on-student sexual harassment claims under Title IX are limited only to those based

---

[16] *See, e.g., Estate of Brown v. Ogletree*, No. 11-CV-1491, 2012 WL 591190, at *17 (S.D. Tex. Feb. 21, 2012) ("As other courts have recognized, sexually derogatory slurs and practices are sufficient to rise to the level of offensive conduct contemplated by the Supreme Court in *Davis*.") (citing cases), *modified on other grounds on reconsideration sub nom. Estate of Brown v. Cypress Fairbanks Indep. Sch. Dis.*, 863 F. Supp. 2d 632 (S.D. Tex. 2012); *Bowe v. Claire Area Sch. Dist.*, No. 16-CV-746-jdp, 2017 WL 1458822, at *3 (W.D. Wis. Apr. 24, 2017) (noting "the consistent pattern of gender stereotype slurs alleged by [the plaintiff] makes it easy to infer that his classmates harassed him because of his failure to adhere to traditional gender stereotypes"); *N.K. v. St. Mary's Springs Academy of Fond Du Lac Wis., Inc.*, 965 F. Supp. 2d 1025, 1034 (E.D. Wis. 2013) (declining to dismiss the plaintiff's Title IX claim given that much of the harassers' rhetoric "seem[ed] to have been based upon [his] failure to conform to gender stereotypes"); *Ray v. Antioch Unified Sch. Dist.*, 107 F. Supp. 2d 1165, 1170 (N.D. Cal. 2000) (noting "the Court finds no material difference between the instance in which a female student is subject to unwelcome sexual comments and advances due to her harasser's perception that she is a sexual object, and the instance in which a male student is insulted and abused due to his harasser's perception that he is a homosexual, and therefor a subject of prey").

on "pervasive" and "widespread" conduct, such as daily mocking and constant name calling, with the "systemic effect of denying the victim equal access to an educational program or activity." *Carmichael v. Galbraith*, 574 F. App'x 286, 289-90 (5th Cir. 2014) (per curiam) (internal citation omitted); *see, e.g., Davis*, 526 U.S. at 653 (allegations of repeated acts of sexual harassment over a five-month period, where harassment was not only verbal but included numerous acts of objectively offensive touching, and where there were multiple victims who were sufficiently disturbed by the misconduct to seek an audience with the school principal, were sufficient to state severe, pervasive and objectively offensive conduct); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015) (noting "repeatedly being referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, and being shamed and humiliated on the basis of one's race is harassment far beyond normal schoolyard teasing and bullying") (internal quotations and alterations omitted). "Whether conduct rises to the level of actionable harassment 'depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved.'" *Sanches*, 647 F.3d at 167 (citing *Davis*, 526 U.S. at 651 (internal citations and quotation marks omitted)). Some federal courts have appeared to look at the type, duration, and effect of the alleged conduct.[17]

---

[17] *See, e.g., Ogletree*, 2012 WL 591190, at *18 (noting "the Complaint alleges numerous instances of sexual harassment that lasted throughout [the student's] middle school years," and finding that "[t]he allegations rise to the level of severe, pervasive, and objectively offensive conduct actionable under Title IX"); *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 966 (D. Kan. 2005) (relying on evidence that the plaintiff was "tormented by his peers for four years," "routinely called names," spat on, the subject of crude drawing, and began suffering from stomach problems and depression to determine that "[t]he harassment was so humiliating that he eventually left school, and therefore, under all of these circumstances, the trier of fact could conclude that he was deprived of educational opportunities"); *Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F. Supp. 2d 917, 931 (C.D. Ill. 2002) ("This court concludes that two or three sexual threats, made outside of Plaintiff's presence, cannot be considered 'severe, pervasive' sexual harassment.").

18

Here, Plaintiff alleges that J.R. was bullied, harassed, and teased on an almost daily basis by his fellow students, beginning in 2009 until his death in 2014, and that as a result his grades suffered, he required special tutoring for STAR testing, that he became more and more depressed, and ultimately committed suicide as a result. (doc. 26 at 2, 14, 17, 23.) Accepting Plaintiff's well-pleaded facts as true and viewing them in the light most favorable to her, she has sufficiently alleged pervasive and widespread conduct with the systemic effect of denying the victim equal access to an educational program or activity.

### 3.     *Deliberate Indifference*

As explained by the Fifth Circuit:

> For a school to be liable under title IX, its response, or lack thereof, to the harassment must be clearly unreasonable in light of the known circumstances. That is a high bar, and neither negligence nor mere unreasonableness is enough. Schools are not required to remedy the harassment or accede to a parent's remedial demands, and courts should refrain from second-guessing the disciplinary decisions made by school administrators.

*Sanches*, 647 F.3d at 167-68 (internal citations, quotations, and alterations omitted); *see also Davis*, 526 U.S. at 642. That a response to a student's complaint of harassment was ineffective does not necessarily make it clearly unreasonable, nor is a response clearly unreasonably because the misconduct continued. *Sanches*, 647 F.3d at 168. As the Fifth Circuit has noted, something more is required for deliberate indifference. *See id.* at 169 n.10 (citing *Doe v. Sch. Bd. of Broward Cty.*, 604 F.3d 1248 (11th Cir. 2010) (teacher sexually assaulted several students, many students reported the assaults, but the teacher was suspended for only a short time, then was allowed to resume teaching); *Patterson v. Hudson Area Schs.*, 551 F.3d 438 (6th Cir. 2009) (sexual assaults of a student increased in severity over a period of five years, but the school took no action to deter the harassers and tried to separate the victim using an alternative teaching method that it knew did not work);

*Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) (student was physically and sexually assaulted, and the school did not conduct any investigations or discipline any students)). What a school may not do, however, is nothing. *See Estate of Brown v. Ogletree*, No. 11-CV-1491, 2012 WL 591190, at *18 (S.D. Tex. Feb. 21, 2012), *modified on other grounds on reconsideration sub nom. Estate of Brown v. Cypress Fairbanks Indep. Sch. Dis.*, 863 F. Supp. 2d 632 (S.D. Tex. 2012)

Here, Plaintiff alleges that J.R. and his parents all informed the school about the bullying, teasing, and harassment that J.R. was enduring at school and that they were assured that the issues would be resolved, but the school officials did not do "anything." (doc. 26 at 2, 14-15, 17.) She further alleges that school failed to implement any appropriate safety measures to prevent future bullying or take any action to stop the bullying. (*See id.* at 2, 20.) Accepting Plaintiff's well-pleaded facts as true and viewing them in the light most favorable to her, she has sufficiently alleged that Defendant was deliberate indifferent by failing to do anything to stop the bullying, teasing, and harassment. Accordingly, Plaintiff has sufficiently alleged a Title IX claim.

**B.** **Title VI**

Defendant next moves to dismiss Plaintiff's Title VI claim under Rule 12(b)(6) because she fails to allege that the conduct of her son's peers was based on race, color, or national origin. (doc. 29 at 14.)

Title VI of the Civil Rights Act of 1964 is a general prohibition against discrimination by federally funded programs. *See Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp. 2d 623, 643 (W.D. Tex. 2013). Section 601 of Title VI, as amended, provides that "no person in the United States shall, *on the ground of race, color, or national origin*, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d (emphasis added). Public educational institutions that receive federal funds are subject to this mandate. *See Fennell.*, 963 F. Supp. 2d at 643 (citing 34 C.F.R. § 100.13(i) (2000) (defining "recipient" to include any public "agency, institution, or organization, or other entity . . . in any State, to whom Federal financial assistance is extended")). Courts have recognized a private right of action under Title VI if the violations alleged involve intentional discrimination by the funding recipient. *See Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001) (holding that Title VI, on which Title IX is patterned, prohibits only intentional discrimination). A school district receiving federal funds may be liable for student-on-student harassment if (1) the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school" (a racially hostile environment), and the district (2) had actual knowledge, (3) had "control over the harasser and the environment in which the harassment occurs," and (4) was deliberately indifferent. *Fennell*, 804 F.3d at 408-09 (citing *Davis*, 526 U.S. at 644; *Sanches*, 647 F.3d at 165).[18]

Here, Plaintiff alleges that:

> because [Defendant] knew that J.R. was being bullied, harassed and physically assaulted based upon his race and failed to keep him safe from harm, and failed to investigate incidents of race-based animus and failed to ensure he was educated in an environment that was not hostile, such failures as noted above, have, together and separately, contributed to violating his rights civil rights.

---

[18] After noting that "the [Supreme] Court's analysis of what constitutes intentional sexual discrimination under Title IX directly informs our analysis of what constitutes intentional racial discrimination under Title VI (and vice versa)," *Fennell*, 804 F.3d at 408 (quoting *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cty.*, 334 F.3d 928, 934 (10th Cir. 2003)), the Fifth Circuit stated, "This court has expressly included an additional element for Title IX student-on-student harassment claims: the harassment was based on the victim's sex. The corollary requirement under Title VI would be that the harassment was based on the victim's 'race, color, or national origin.'" *Id.* at 409 n.23 (citations omitted).

(doc. 26 at 22.) Beyond conclusory allegations that her son was bullied and harassed in part because of his race, Plaintiff has not alleged sufficient facts to infer that the conduct of her son's fellow students were racially motivated. (*See* doc. 26 at 14.) Her complaint alleges that her son was bullied and harassed by other students because of his weight or for no apparent reason at all. For example, she did not allege any motivation for the P.E. incident on April 25, 2013, during which J.R. was hit with a hockey stick, and she explicitly alleged that an incident involving students of another race on May 5, 2014 was "based upon his obesity." (*See id.* at 2, 15, 17-18.)

Even accepting her well-pleaded facts as true and viewing them in the light most favorable to her, Plaintiff has not alleged that J.R. was harassed by other students based upon his race. *Cf. Fennell*, 963 F. Supp. 2d at 644-45 (the plaintiffs alleged that over a number of years white classmates frequently subjected them to racial slurs, and that their teachers and principals took no action—whether investigatory or disciplinary—even after the girls reported the slurs). Plaintiff has not nudged her Title VI claim across the line from conceivable to plausible. *See Mohamed for A.M. v. Irving Indep. Sch. Dist.*, ___ F.3d ___, No. 3:16-CV-2283-L, 2017 WL 2189414, at *17 (N.D. Tex. 2017) (granting a motion to dismiss on a racial discrimination claim because the plaintiff's "bare allegations [did] not meet the *Iqbal* standard") (citing *Iqbal*, 556 U.S. at 678). The motion to dismiss her Title VI claim for failure to state a claim is therefore granted.[19]

## C.    § 504

Defendant also moves to dismiss the § 504 claim for failure to state a claim. (doc. 29 at 17.)

Section 504 of the Rehabilitation Act of 1973 is an anti-discrimination statute which provides

---

[19] Defendant also generally argues that Plaintiff has not pleaded any of the four elements for student-on-student harassment in the Title VI context. (doc. 29 at 15) (noting "Plaintiff has failed to plead these four prongs"). Because Plaintiff has not sufficiently alleged that J.R. was harassed by other students based upon his race, Defendant's other arguments need not be considered.

that "[n]o otherwise qualified individual with a disability in the United States, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination." 29 U.S.C. § 794(a). This provision "broadly prohibit[s] discrimination against disabled persons in federally assisted programs or activities." *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010); *see also M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, New Prague*, 439 F.3d 865, 867 (8th Cir. 2006) ("Section 504 is a proscriptive, anti-discrimination statute that prohibits discrimination on the part of governmental actors to avoid due process and equal protection violations.").

### 1. Failure to Provide

Defendant first argues that Plaintiff fails to allege the necessary elements of a failure-to-provide claim and instead "essentially raises an educational malpractice claim that is based on an assumption that he should have been evaluated and identified as a student with a disability under Section 504 or IDEA." (*See* doc. 29 at 18-19.)

To prevail on a failure-to-provide claim under § 504, a plaintiff must show that a defendant "*refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 990 (5th Cir. 2014) (quoting *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983)). "*Marvin H* used the term 'refusal' because the statute requires intentional discrimination against a student on the basis of his disability." *D.A.*, 629 F.3d at 454 (citing *Marvin H.*, 714 F.2d at 1356). The Fifth Circuit has endorsed the view that "to establish a claim for disability discrimination, in th[e] education context, 'something more than a mere failure to provide the '[FAPE]' *required by [IDEA] must be shown*.'" *Id.* at 454 (emphasis added) (quoting *Monahan v. Nebraska*, 687 F.2d

1164, 1170 (8th Cir. 1982)); *accord Lance*, 743 F.3d at 992 (citing *D.A.,* 629 F.3d at 454).  At a

minimum, then, a plaintiff is required to allege a denial of a FAPE under IDEA to sustain a § 504

claim based on the denial of a § 504 FAPE because "§ 504 regulations distinctly state that adopting

a valid IEP is sufficient but not necessary to satisfy the § 504 FAPE requirements." *Lance*, 743 F.3d

at 992 (quoting *Mark H.*, 513 F.3d at 933).

Additionally, "facts creating an inference of professional bad faith or gross misjudgment"

are necessary to substantiate a cause of action for intentional discrimination under § 504 against a

school district.  *D.A.*, 629 F.3d at 454.  As explained by one federal circuit court, "So long as the

state officials involved have exercised professional judgment, in such a way as not to depart grossly

from accepted standards among educational professionals, we cannot believe that Congress intended

to create liability under Section 504."  *D.A. v. Houston Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 619-

20 (S.D. Tex. 2009) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982)).  Section

504 "do[es] not create general tort liability for educational malpractice," however.  *D.A.*, 629 F.3d

at 454.

Here, Plaintiff does not allege that Defendant or its staff discriminated against her son

because of any disability.  (*See* doc. 26.)  Rather, she alleges that her son was never recognized as

a student with a disability or provided a psychological assessment, school-based counseling services,

or other services, but she does not allege that she requested them.[20]  (*See id.* at 20.)  She claims that

_____

[20] Plaintiff contends that Defendant failed in this duty "whether it be based upon [IDEA] or Section 504 of the
Rehabilitation Act of 1973." (doc. 26 at 23.)  The Fifth Circuit, however, has recognized the differences between a
school's obligations under IDEA and § 504.  *See Lance*, 743 F.3d at 990-93.  For example, the *Lance* court noted that
IDEA and § 504 define both disability and FAPE differently.  *Id.* at 990-91.  "Accordingly, while students may qualify
for special services under IDEA and also for protection under § 504, some students may qualify for § 504 protection but
not qualify for special services under IDEA." *Id.* at 991 (citing *Ellenberg v. N.M. Military Inst.*, 572 F.3d 815, 819-23
(10th Cir. 2009) (warning against "conflat[ing] the definition of a 'disabled' child under the IDEA with the definition
of a 'handicapped person' under Section 504" and noting that "Section 504 has a broader scope than the IDEA: while
the IDEA focuses on the provision of appropriate public education to disabled children, Section 504 addresses the

her son's school knew of his depression and should have therefore concluded that he needed special accommodations of some type.[21] (doc. 38 at 20) (noting that "School District personnel knew of the depression and prescribed medication in October of 2012 but failed to address his disabling condition at school," "he was never referred for Special Education services or Section 504 Accommodations or anything for that matter," and that "[t]hey never sought consent to speak to his therapist or physician or to see any treatment records"). According to the Fifth Circuit, however, "[a plaintiff] cannot be discriminated against because of his disability until it has been demonstrated to exist." *D.A.*, 629 F.3d at 455. Beyond a mere assertion that the school knew of her son's depression, Plaintiff has not alleged that anyone actually informed her son's school of his alleged disabilities, or that it had reason to suspect that reasonable accommodations were needed. She alleges that her son informed the administrators and band director of his dreams, hearing voices, and taking medication for depression on the day he committed suicide. (*See* doc. 26 at 18.) Plaintiff has failed to allege a plausible claim that her son was disabled for purposes of § 504.

Evening if Plaintiff had sufficiently alleged that her son suffered from a disability within the meaning of § 504, she has not alleged facts showing that Defendant had reason to suspect that accommodations were needed. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 249 (3d Cir. 2012) (noting "[s]chool districts have a continuing obligation under the IDEA and § 504—called Child Find—to identify and evaluate all students who are *reasonably suspected of having a disability*

---

provision of state services to disabled individuals generally"); *Muller ex rel. Muller v. Comm. on Special Educ.*, 145 F.3d 95, 99 & n. 2 (2d Cir. 1998) ("For example, § 504's reach extends not only to individuals who in fact have a disability, but also to individuals who are regarded as having such a disability (whether or not that perception is correct).")).

[21] Plaintiff alleges in conclusory fashion that J.R.'s morbid obesity qualified as a disability under § 504 in her complaint, but she provides no facts to support her conclusion that he was disabled on this basis, or that he needed special accommodations because of it. Her response to Defendant's motion to dismiss her § 504 claims did not address J.R.'s obesity and focused solely on his depression, behavior problems, and suicidal ideation. (*See* doc. 38 at 25-28.)

*under the statutes*") (citation and internal quotation marks omitted); *P.P ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 738 (3d Cir. 2009) (same); *Solanco Sch. Dist. v. C.H.B.*, No. 5:15-CV-02659, 2016 WL 4204129, at *3 (E.D. Penn. Aug. 9, 2016) (same). Accepting Plaintiff's well-pleaded facts as true and view them in the light most favorable to her, she has not alleged that Defendant intentionally discriminated against her son by refusing to provide reasonable accommodations for him to receive the full benefits of the school program. *See D.A.*, 629 F.3d at 454 (noting that § 504 "do[es] not create general tort liability for educational malpractice").

### 2. *Student-on-Student Harassment*

Defendant next argues that Plaintiff fails to allege the necessary elements of a student-on-student harassment claim under § 504. (doc. 29 at 18.)

The Fifth Circuit recognized a § 504 claim based on student-on-student harassment for the first time in *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 990 (5th Cir. 2014). *See Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217, 221 (5th Cir. 2015) (per curiam). "Section 504 does not require that schools eradicate each instance of bullying from their hallways to avoid liability." *Lance*, 743 F.3d at 996 (noting "Judges make poor vice principals"). Instead, a plaintiff must show:

> (1) he was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) [defendant] knew about the harassment, and (5) [defendant] was deliberately indifferent to the harassment.

*Nevills*, 608 F. App'x at 221 (citation omitted). To recover compensatory damages under § 504, a plaintiff must demonstrate intentional discrimination. *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002). The Fifth Circuit has observed, however, that "[s]o long as state officials

involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under § 504." *D.A.*, 629 F.3d at 454-55 (quoting *Monahan*, 687 F.2d at 1170).

Here, Plaintiff alleges that her son was bullied and harassed because of his weight or for no apparent reason at all–not his depression. Even accepting her well-pleaded facts as true and viewing them in the light most favorable to her, Plaintiff has not alleged that J.R. was harassed by other students *based upon his disability*.[22] The motion to dismiss her § 504 claim is therefore granted.

## D. **§ 1983**

Defendant moves to dismiss Plaintiff's § 1983 claim for failure to state a claim. (doc. 29 at 20-21.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."). Under § 1983, a municipality or local government entity, such as an independent school district, may be held liable when a plaintiff shows three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (some internal quotation marks omitted).

---

[22] Because Plaintiff has not sufficiently alleged that J.R. was harassed by other students based upon his disability, Defendant's other arguments need not be considered.

### 1.    *Ratification and Respondeat Superior*[23]

Defendant contends that Plaintiff's ratification theory "is essentially an attempt to seek liability through *respondeat superior*." (doc. 29 at 27.)

Under § 1983, "a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998) (citations omitted); *see Valle*, 613 F.3d at 541-42 (stating elements for municipal liability). Accordingly, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691 (1978).

Although municipal liability cannot be established through *respondeat superior*, the Supreme Court recognized the ratification theory of municipal liability in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988). *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 871 (S.D. Tex. 2014). As the Supreme Court explained:

> When a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Praprotnik*, 485 U.S. at 128 (emphasis in original). Ratification theory "is necessarily cabined in several ways . . . to prevent the ratification theory from becoming a theory of *respondeat superior*," however. *Milam v. City of San Antonio*, 113 F. App'x 622, 626-27 (5th Cir. 2004). For example, the mere failure to investigate a subordinate's decision does not amount to ratification, and

---

[23] Although Defendant addresses ratification and *respondeat superior* last under the § 1983 section of its motion to dismiss, it is considered first here because its relation to the overall nature of municipal liability.

policymakers who simply go along with a subordinate's decision do not thereby vest final policymaking authority in the subordinate. *Id.* Additionally, as explained by the Fifth Circuit, the ratification theory must be applied with the understanding that "[p]olicymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." *Id.*

Plaintiff's amended complaint alleges in its entirety:

118. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.
119. Kerens ISD ratified the acts, omissions and customs of school district personnel and staff.
120. As a result, Kerens ISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of J.R.

(doc. 26 at 26.) Beyond mere conclusory allegations, however, her amended complaint provides no support. (*See id.*) She later focuses on the actions of the school board, i.e., its notice, failure to follow its own policies and procedures, and failure to supervise—but not its ratification of subordinates acts, as a basis for § 1983 liability. (*See id.* at 36) Accordingly, to the extent that Plaintiff attempts to establish liability on a theory of *respondeat superior* or ratification, she has failed to state a plausible claim. *See Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007) ("A school district has no vicarious liability under § 1983.").

### 2. Constitutional Violation

Defendant contends that Plaintiff fails to state a constitutional violation under the Due Process Clause because she complains of private action by students, and she fails to adequately plead a class of one theory under the Equal Protection Clause. (doc. 29 at 22, 26.)

### a. Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive

a person of life, liberty or property without due process of law." U.S. CONST. amend. XIV. To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990) (citations omitted), *cert. denied*, 498 U.S. 1040 (1991). "The Supreme Court has expanded the definition of 'liberty' beyond the core textual meaning of that term to include [not only] the . . . privileges [expressly] enumerated by the Bill of Rights, [but also] the 'fundamental rights implicit in the concept of ordered liberty' and 'deeply rooted in this Nation's history and tradition' under the Due Process Clause." *Id.* A state's failure to protect an individual against *private* violence generally does not constitute a violation of the Due Process Clause sufficient to state a claim under § 1983, however. *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 855 (5th Cir. 2012) (en banc).

Defendant also contends that Plaintiff has failed to state a claim under the theory of "state-created danger." (doc. 29 at 22.) The state-created danger theory is an exception to the general rule that § 1983 liability cannot arise out of the wrongdoings of private actors. *See Fletcher v. Lewisville Indep. Sch. Dist.*, No. 4:14-CV-359, 2016 WL 3381296, at *3 (E.D. Tex. Mar. 9, 2016), *adopted by* 2016 WL 1383879 (E.D. Tex. Apr. 7, 2016). Under this exception, a state actor may be liable under § 1983 if it created or knew of a dangerous situation and affirmatively placed a plaintiff in that situation. *See Covington*, 675 F.3d at 864. Although the Fifth Circuit has repeatedly declined to adopt the state-created danger theory as an exception, it has noted that the state-created danger theory requires a plaintiff to allege that (1) "the defendants used their authority to create a dangerous

environment for the plaintiff" and (2) "that the defendants acted with deliberate indifference to the plight of the plaintiff." *Covington*, 675 F.3d at 865 (internal citations and alterations omitted); *see Doe*, 2017 WL 1661416, at *4 (noting "[the plaintiff] also did not satisfy what we have said would be necessary to establish a claim under the state-created-danger exception—*were we to adopt such an exception*") (emphasis added).

Here, Plaintiff alleges in her amended complaint that Defendant's acts "demonstrate violations of J.R.'s civil rights pursuant to the *due process clause*" and that "[t]he acts and omissions of staff persons evidence a failure of the Kerens Independent School Board to provide appropriate training and supervision to staff, violating the rights of J.R. pursuant to the Due Process clause of the Fourteenth Amendment, for which the School District is liable to him thereby." (doc. 26 at 25.) There are no allegations that Defendant used its authority to create a dangerous environment or that it took an affirmative action that made J.R. more likely to be harmed. (*See id.*) Plaintiff seeks to allege a constitutional violation based upon what amount to an ineffective policy or practice by Defendant and an injury inflicted by private actors. (*See id.*) The Fifth Circuit has explicitly cautioned against finding liability under the state-created danger theory under such circumstances, however. *See Covington*, 675 F.3d at 866. Accordingly, even accepting her well-pleaded facts as true and viewing them in the light most favorable to her, Plaintiff has not alleged liability under the state-created danger theory, even if it existed within the Fifth Circuit. *See Lance*, 743 F.3d at 1002 (citing *Johnson v. Dall. Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 250 (5th Cir. 2003).

Plaintiff has failed to allege a plausible constitutional violation under the Due Process Clause of the Fourteenth Amendment.

###### b. Equal Protection

Defendant also moves to dismiss Plaintiff's equal protection claim because she cannot show any constitutional violation caused by Defendant. (doc. 29 at 21.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. CONST. amend. XIV, § 1). Thus, "[t]o state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)); *accord Mohamed*, 2017 WL 2189414, at *7.

Here, as with her due process claim, Plaintiff seeks to allege a constitutional violation based upon what amount to an ineffective policy or practice by Defendant and an injury inflicted by private actors. (*See* doc. 26 at 25.) Because she has failed to base her constitutional allegations on the actions of state actors, her equal protection claim also fails. *See, e.g., Fletcher*, 2016 WL 3381296, at *4 (dismissing a student's equal protection claim under § 1983 on similar grounds); *Doe*, 2017 WL 1661416, at *4 (noting "[the plaintiff's] case presents no basis for a procedural-due-process or an equal-protection claim"). Accordingly, Plaintiff fails to state an equal protection claim under the Fourteenth Amendment against Defendant.

Defendant also contends that Plaintiff's allegation that it "singularly discriminated against [her son] as a *class-of-one*" fails. (*See* doc. 29 at 26.) Generally, a plaintiff may assert "an equal

protection claim based on a 'class of one.'" *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 823-24 (5th Cir. 2007). To do so, however, the plaintiff must show that "(1) he or she was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Id.* (citation omitted). Plaintiff's amended complaint fails to make any allegations regarding how J.R. was treated differently from other students or that there was no rational basis for such disparate treatment, if it existed. (*See* doc. 29); *see, e.g., Bryan*, 188 F. Supp. 3d at 619-20 (granting a motion to dismiss on a class of one claim). She has therefore failed to allege sufficient facts to raise her right to relief above the speculative level. *See Twombly*, 550 U.S. at 555. Plaintiff's § 1983 claim is therefore **DISMISSED**.

## IX. CONCLUSION

Defendant's Rule 12(b)(1) motion to dismiss is **DENIED,** and its Rule 12(b)(6) motion to dismiss is **GRANTED in part** and **DENIED in part**. Plaintiff's Title VI, § 504, and § 1983 claims are **DISMISSED** for failure to state a claim.[24] Although Defendant moved to dismiss Plaintiff ADA claim under Rule 12(b)(1), it did not move to dismiss her ADA claim under Rule 12(b)(6),[25] so this claim remains pending with her Title IX claim.

**SO ORDERED** this 6th day of June, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[24] In her response, Plaintiff requests an opportunity to amend her amended complaint before granting Defendant's motion to dismiss. (doc. 38 at 11, 37.) Because her request does not comply with the applicable rules of civil procedure or local rules, it is not construed as a motion for leave to amend.

[25] Both parties mention the ADA in the § 504 context of the motion to dismiss and response, but Defendant did not actually move to dismiss Plaintiff's ADA claim under Rule 12(b)(6). (*See* docs. 29 at 18-19; 38 at 28-29.)